UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA, | MEMORANDUM |
| | AND |
| Plaintiff, | ORDER |
| | |
| - against - | 95-CR-392 (S-l) (TCP) |

STEPHEN ANTHONY MARC JOHNSON,
also known as "Stephen Anthony," "Samuel
Freedman," "Stephen V. Freedman,"
"David R. Freeman," "Steven Freeman,"
"Steven Anthony Gonsales," "Anthony
Gonsalves," "Stephen Anthony Gonsalves,"
"Stephen Ray Gonsalves," "Steven
Gonsalves," "Stephen V. Gonzales,"
"Steven Gonzales," "Stephan Gonzalves,"
"Steven Gonzalves," "Marc Johnson,"
"Stephen Anthony Mark Johnson,"
"Moses," "Mo" and "Prophet,"

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PLATT, District Judge.

   More than three years after entering a plea of guilty to conspiracy to distribute in excess of one thousand (1,000) kilos of hashish and marijuana, defendant seeks:

   1) to withdraw his plea claiming it was involuntary because his lawyer provided him with ineffective assistance; or

   2) to compel the Government to issue a Section 5K1.1 motion under the United States Sentencing Guidelines; and

      3)      the Court to grant him a sentence reduction, claiming that the Government's refusal to do so was done in "bad faith."

In essence, the case of ineffective assistance of counsel comes down to this: Notwithstanding (i) defendant's refusal to answer innumerable questions of the Government agents; (ii) the staleness of the sketchy information he did give to the agents; and (iii) the lack of truthfulness of much of the information which defendant was willing to give, the defendant's allegedly "ineffective" former counsel persuaded the Government to reduce an original plea offer from a continuing criminal enterprise charge with a 20 year minimum-maximum/life sentence, to a lesser offense of a 10 year minimum conspiracy count. "Ineffective" counsel achieved this result in the face of (a) defendant's prior conviction in 1980 in Federal Court in Nevada for conspiracy to distribute hashish and (b) the charge in the case at bar that in the years between 1984 and 1995 defendant had been directing the supply of and dealing in the sale of <u>tons</u> (not pounds or kilos) of drugs and hashish and money laundering of millions of dollars of drug proceeds. The forfeiture provisions contained in the indictment sought to recover one hundred million dollars in cash and liens were placed against some of the defendant's corporations and real property.

Some of the evidence in this <u>multi-ton</u> drug conspiracy was laid out, and a number of co-conspirators gave testimony in the lengthy jury trial,

before the undersigned, in *United States v. Vondette*, 97-CR-1010 (E.D.N.Y. Sept. 6, 2002), *aff'd* 2003 U.S. App. LEXIS 17952 (2d Cir. Aug. 27, 2003), *amended by* 2003 U.S. App. LEXIS 26289 (2d Cir. Dec. 24, 2003).

Defendant was arrested in Canada on March 21, 1995. After three years of litigation disputing his extradition to this Country, defendant appeared in this Court for arraignment on August 8, 1998, claiming that he was destitute and persuaded the Court to appoint a pro bono attorney for him from its Criminal Justice Act list. Defendant stated at the time that he wanted his present lawyer, Robert Simels, Esq., to represent him, but Mr. Simels declined to do so. The Court appointed former Assistant United States Attorney Douglas Burns and at the outset, defendant refused to cooperate with Mr. Burns.

Later, discovery was provided to Mr. Burns which included extensive documentation concerning defendant's smuggling and distribution scheme obtained by the Royal Canadian Mounted Police in searches of the defendant and his co-conspirator Gregory Timewell's residences in Toronto and numerous video and audio recordings of the defendant's telephone conversations and meetings with an undercover officer. These recordings contained the defendant's discussion of logistics, finances and cash payments relating to a mid-Atlantic off-load.

After receipt of all of the foregoing, defendant and his

"ineffective" counsel persuaded the United States Attorney's Office that defendant wished to cooperate and a series of interviews were arranged. At the first two, on February 9 and 25, 1999, defendant furnished only outdated information and refused to answer even "pretty simple questions." Eight additional interviews on April 21, June 21, July 20, August 18, August 19, September 1, October 20 and November 3, 1999, were arranged but defendant declined to be interviewed on each and every date.

As a result, the United States Attorney notified the defendant by letter dated January 7, 2000, that no cooperation agreement would be offered and none has been made to date.

Nonetheless, notwithstanding defendant's intransigence towards Mr. Burns, his "ineffective" counsel negotiated a written plea offer to one of the lesser conspiracy counts in the indictment, which was accepted by the defendant.

The written plea agreement, containing this offer, which is dated February 18, 2000 (over four and a half years ago), was signed by both the defendant and his attorney.

In paragraph one, defendant agrees that he will plead guilty to Count Three of his indictment and he agrees that it carries a minimum term of imprisonment of ten years and a maximum term of imprisonment for life. It also states that his sentence is to be governed by the United States Sentencing

Guidelines.

In paragraph two on page 2, the United States Attorney estimates that the minimum likely total offense level under the Guidelines will be Level 35, which when reduced by three points for acceptance of responsibility, carries a range of imprisonment of 188 to 235 months assuming that defendant falls in criminal history category II (not a higher level and many more months, plus category IV, as would have been the case without the agreement).

In addition, in paragraph 3, the defendant agrees he will not be entitled to withdraw his plea if the Guidelines Offense Level is different from the estimate.

In paragraph 5, the defendant agrees that he will not file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a sentence within or below the range of imprisonment set forth in paragraph 2 and that this waiver is binding upon the defendant even if the Court employs a Guidelines analysis different from that set forth in paragraph 2.

Finally, in paragraph 8, the parties agree that (other than the proffer agreement dated February 9, 1999) no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties; and that "this agreement supersedes all prior promises, agreements or

Guidelines.

In paragraph two on page 2, the United States Attorney estimates that the minimum likely total offense level under the Guidelines will be Level 35, which when reduced by three points for acceptance of responsibility, carries a range of imprisonment of 188 to 235 months assuming that defendant falls in criminal history category II (not a higher level and many more months, plus category IV, as would have been the case without the agreement).

In addition, in paragraph 3, the defendant agrees he will not be entitled to withdraw his plea if the Guidelines Offense Level is different from the estimate.

In paragraph 5, the defendant agrees that he will not file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a sentence within or below the range of imprisonment set forth in paragraph 2 and that this waiver is binding upon the defendant even if the Court employs a Guidelines analysis different from that set forth in paragraph 2.

Finally, in paragraph 8, the parties agree that (other than the proffer agreement dated February 9, 1999) no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties; and that "this agreement supersedes all prior promises, agreements or

conditions between the parties."

On the same date, February 18, 2000 (more than four and a half years ago), defendant appeared before this Court. After being warned of his rights and answering preliminary questions, in which he stated that he was in good health, the defendant said he understood what was going on and that the Court was going to ask him certain questions to make sure that he understood what he was doing and that he was doing it voluntarily.

Thereafter, the defendant admitted that he understood the offenses with which he was being charged. Also, he understood that the Government must prove, beyond a reasonable doubt, each of the essential elements of the crime charged including that he knowingly and willfully joined in a conspiracy between two or more persons, with knowledge of its purpose, and that he knowingly, willfully and intentionally participated in the conspiracy and that no one forced him to do it. The defendant also stated that he signed the plea agreement and prior to signing the agreement, he read and understood it and reviewed it with his lawyer, and he had no questions about it at that time. In addition, he said that no promises of any kind whatsoever (including any promises or suggestions as to what sentence might be imposed) by his lawyer, by this Court or by anyone connected with the Government or anyone else to induce him to plead guilty and that he was not threatened or coerced any way in pleading guilty. Thereafter, the

defendant pled guilty.

Subsequent to the preparation of a presentence report by the Probation Department and the Department's calculation of the applicable Guidelines, which proved to be higher than the Government's estimate, defendant sought to withdraw his plea. In response he was given yet another opportunity on April 18th and 26th, to provide information to the Government and he, again, failed to do so.

*Strickland v. Washington,* 466 U.S. 668 (1984), prescribed the substantive standards for "ineffective assistance of counsel," namely that an attorney's performance was constitutionally inadequate and that the constitutional ineffective performance affected the outcome of the plea process (i.e. that there was a reasonable probability that, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial).

Thirty-one (31) months after of entering his plea of guilty (and ninety (90) months after he was arrested), on the grounds that Mr. Burns "essentially deserted me" and that he was "deceived" by Mr. Burns, defendant now moves to vacate his plea.

Given the extensive opportunities that Mr. Burns arranged to enable the defendant to cooperate with the Government and the virtual total lack of cooperation provided by the defendant and considering the very substantial

plea benefit Mr. Burns was able to negotiate with the Government for the defendant, defendant's claim that his former counsel was "ineffective" borders on the ludicrous. Moreover, defendant's claim that he is entitled to a cooperation agreement and a 5K1.1 motion is equally ludicrous.

Furthermore, the more than 30 months delay (two and a half years) on the part of the defendant to move to vacate his voluntary plea given to this Court, does not furnish any reasonable basis to credit defendant's present claims. Moreover, not once did the defendant choose to testify to substantiate his claims against his "ineffective" counsel. Mr. Burns not only negotiated the elimination of the career criminal offense charged with its 20 year minimum, but the defendant admitted in his colloquy with the Court that prior to signing his plea agreement with the Government, he had read it, understood it and had it explained to him by his attorney, and stated that he had a number of questions and his attorney had, in his view, given him satisfactory answers to all of the questions and he did not, at the time of his plea, have any questions about the agreement.

The Court also agrees with the government's argument that the defendant's claims smack of gamesmanship as much of the evidence and many of the witnesses who would be required to testify in any trial against the defendant may no longer exist.

Finally, a brief comment on defendant's new counsel's attempt to

divert attention from the merits of this motion and the merits of the case, to an attack on the integrity of defendant's former counsel, Douglas Burns. Suffice it to say that if counsel entertained at the time he made the present motion a legitimate belief that Mr. Burns had engaged in any wrongdoing, his duty then was to report the same to the appropriate authorities. It is not his duty to raise inferences of possible missteps by Mr. Burns in his handling of his obligations under the Criminal Justice Act and try to equate any of the same to the question of whether he had properly performed his professional duties on behalf of the defendant. Simple examination of the facts shows that Mr. Burns did so.

Defendant's motion must be and the same hereby is **DENIED**.

**SO ORDERED**.

\_\_/S/_____
District Judge, United States District Court

Dated:  November 29, 2004

Central Islip, New York